Good morning, Your Honors, and may it please the Court, Jay Jambeck for Noah Saeedy. I'd like to reserve two minutes for rebuttal. Very well. The Court should reverse the order of the District Court making factual findings and dismissing this action for three reasons. The first reason is that the cause of action had not accrued as of October 2017. The key question for whether an action accrues is whether the party knows or should know that they have been injured. Mr. Saeedy did not know in October 2017 that he had been injured. What was Mr. Saeedy seeking at that point in October when he received the letter? He was seeking a waiver of the math requirement. And the letter says the math requirement will not be waived for you or any student. And then there's a description of why. Correct. That tells him he's not going to get what he asked for. That's not an injury, though. What that is is telling him you're not going to get your request at accommodation. He's not injured until he knows or should know that he's not going to be graduating as a result of that. He asked for a waiver because he – I mean, he must have known that it was a requirement or he wouldn't have asked for it to be waived, right? He did know it was a requirement, correct. Okay. And a requirement is required to get to graduation. And he asked for a waiver, and he was told no in writing by the person in charge, the dean. True enough, although you have the overlay of the Americans with Disabilities Act here, which allows for accommodations from requirements. And so what was denied as of October was his – Mr. Saeedy's requested accommodation. But the dean invited – in fact, instructed Mr. Saeedy to pursue alternative courses or some other way that he could comply with the requirement, which Mr. Saeedy then went forward from that point and did, including discussions with the Department of Humanities. And that extended until April of 2018. So his injury did not occur – Well, I'm interested in knowing more about what that paragraph means. I have a letter here in front of me, and it says, if you need assistance with the appropriate equivalence to the required math courses, you're instructed to contact blah, blah, blah. Which means you have a choice. He's not being told to do it. He's told – he has to do an equivalent. He has to do an equivalent. And if he wants to, he can get some help with it. But he's told, you aren't going to get a waiver. You can do an equivalent. Go do it. But he's still not injured at that time because he doesn't know whether he can satisfy those equivalents or not. He doesn't know what they are. The dean doesn't specify anything he has to engage in. And that leads to my next argument, is the interactive process. But he has to engage in that process in order to determine whether or not he can – he can complete these equivalents. So the equivalent might be an independent study that has a light math requirement or a philosophy course that has minimal math requirements. He doesn't know at that point. And so he has to go through the process of exploring what these accommodations might be. And he does that. He does that in good faith. And the court should ask – should ask this. If Mr. Saeed had said as of October, fine, I'm filing a lawsuit now, I'm going to decide that I'm injured and I'll file a lawsuit, that would have likely been dismissed for failure to engage in the interactive process. The interactive process is a duty imposed on both sides to engage in this back and forth to determine whether or not a disability can be – He essentially has been involved in that interactive process for nine years? Agreed. That that was an elongated period of time. But there was never any finding prior to October 2017 whether a waiver would be provided or not. Could those nine years perhaps have suggested to him that this was going to go on for another period of time until there was a final, final, no equivalent that could be taken? Well, that's kind of the whole issue here is that until the interactive process comes to its terminus, it could extend for, you know, an indefinite period of time. The parties have an obligation to go back and forth and negotiate and to complete that process. And that was only done as of April 2018 when the parties met and decided there was no other appropriate equivalence that he could take. So the interactive process requires Mr. Saeed to go forward with what the dean had suggested. He didn't have an option to just stop at that point. Counsel, I had a question about the letter. It's a little different than the questions you've had so far, but it's that same sentence. It says, the math requirement will not be waived for you or any student, and then this is what I'm curious about. As it is a longstanding fundamental part of the school's requirement for all majors. It doesn't say the university's. It says the school's. Yes. The School of Social Sciences, I assume that means. Correct. Right. Now, are you arguing in this – I'm not trying to make stuff up here. I just want to understand what you're trying to argue here. Is that there are many schools at UC Irvine. Correct. There's a school of this. There's a school of that. Is it any part of your case where your client would be arguing, look, when I got this letter, I understood I wasn't going to get a good degree from the School of Social Sciences, but maybe I could go transfer to another school within the university and still get my degree? Well, again, he had various discussions from this period from October through April 2018. We didn't plead everything that occurred because we're not required to plead around the affirmative defense of the statute of limitations. So there was complicated discussions he had about how he might be able to get an equivalent degree from another program, and then that included, yes, the Department of Humanities. So he looked into whether he could get an equivalent degree from another department within the school. That's correct. So is it, and I'm asking the UC the same question, but is it part of your case that when he got this letter, he could at least say, well, okay, maybe it's not going to happen here, but maybe I can get a degree in humanity somewhere else. And therefore, this blockage, I'll call it this blockage of this letter established, you know, this cutoff here may not apply to a different school within UCI. That's right. That was explored. And that's what he was exploring at the Department of Humanities until April 30, 2018. So this second issue on the interactive process is separate and apart from the accrual. Even if you think he was injured as of October 2017, the interactive process worked to toll the running of the statute of limitations, even if he was injured. The case we cited, the California Supreme Court case on tolling in light of the interactive process, Richards v. C.H. 2M Hill, provides that the interactive process does indeed toll the running of the statute of limitations until- Well, under the federal statute about tolling. Well, the tolling is applied, it applies, state law applies to the tolling issue. And so, if the court is looking at tolling, which it should for this interactive process issue, then you look to state law and the California Supreme Court case of Richards controls, which says that until such a time as further efforts at informal conciliation are futile, the statute is tolled. And so, it was not futile as of October 2017, the dean said, look, please proceed to, instructed him to proceed to explore these other options. I have a third point that I'll address that. You want to reserve? The third point is only that this is a systemic issue that applies to all students who have dyscalculia. So, the case law regarding systemic tolling of statute of limitations, I believe, applies as well. All right, very well. We'll go ahead and round it up to two minutes. Thank you. Good morning, Christopher Wagner for the Regents of the University of California. I'd like to first address the narrative that we heard a second ago and we see it in the briefs from the appellant's perspective. From his perspective, he, after discussing possible waiver of the math requirement for about 10 years, he gets this letter on October 6, 2017, and the dean of the School of Social Sciences instructs him to pursue alternative equivalence. That's what they say happened. But if you read the letter, that's not what the letter says at all. The letter says, as Judge Graber mentioned, you will not get a waiver from the School of Social Sciences. So after 10 years of trying to get a political science degree from the School of Social Sciences, they said definitively, you cannot get a math waiver. But what it also did, it mentioned that the alternative that was available to him was taking an approved calculus semester and a statistics semester off the UCI campus. He mentioned that in the letter. And then the last paragraph, the dean refers Mr. Saidi to the Undergraduate Student Affairs Office for assistance, quote, and for review of the courses to ensure their transferability. It's very clear, transferability. He's talking about those off UCI courses. Well, couldn't it be a different school within the university that questioned whether it would transfer and satisfy the School of Social Sciences requirement? Well, since no other part of the letter mentions that, has any indication that there's some other school, and also because up to that point, he had only discussed getting a political science degree. He had, that's what he'd been working for towards, for about 10 years. So I think it would be unreasonable to interpret transferability to refer to something, some other school at UCI. Regarding the limitations, the statute of limitations issue, I think the Morgan case, the Ledbetter case, I think they're clear. When you know when the injury occurred, there's no recovery for that injury if you don't sue within the statute of limitations. In this case, there's no question. The injury occurred on October 6, 2017. As I said, he'd been working towards this degree for 10 years. It was political science degree is what he was looking for. If you look through the First Amendment complaint, he complains that he had satisfied every other requirement for a political science degree. He also complains that other UC campuses don't have this requirement. So I think it's very clear that the injury happened on October 6, 2017, and he knew or didn't. Then the question is, well, how do we, what do we do with this April 30, 2018 meeting? When you read through that one paragraph that discusses it, it says that he, first of all, he did not follow the instructions of the dean. The dean said, talk to this woman, she'll help you with these off-campus courses that would satisfy the requirement. Instead, he ends up at a different school, apparently thinking about getting a different degree, although we don't know what degree that would have been. It's not mentioned anywhere. He speaks to somebody who we don't know who they are, and in that paragraph, it says nothing about discrimination. It just says that the School of Humanities also has a requirement for math. So the argument is that since he was continuing this interactive process, we can use that later date. This is very similar to what happened in the Evans case, Seidener brief, and in the Ricks case, where you have a definitive date where an injury occurred, and then some subsequent event occurs, and the plaintiff tries to move it forward. Here he had this subsequent meeting with some unknown person at the School of Humanities about possibly getting a degree, that we don't know what it is, and he's trying to move the statute of limitations forward to that date. But there's no indication that there's any discriminatory conduct. In the Ricks case, and in the Evans case, the court, the U.S. Supreme Court, refused to infer that there's some discriminatory conduct in some later event, such as this one. I'd also like to mention the continuing violations doctrine. This doctrine, the purpose of the doctrine, is so that a plaintiff is not handicapped because he or she does not know when the injury occurred. In this case, it could not be clearer. He was working towards a political science degree for 10 years. Everything in the First Amendment complaint, it discusses political science, his political science degree. And he was, on October 6, 2017, he was told he would not get the waiver. So I don't think there's much to talk about in terms of continuing violations. I'd also point out that Byrd v. Department of Human Services, which is a Ninth Circuit case, their assessment of the continuing violations doctrine after the Morgan case is that there's really not much left to it except in a hostile work environment type case, which would make sense. But that is not what we have here. So I think it's clear the injury occurred well outside the three-year statute of limitations, and the judgment should be affirmed. I think your argument would be much, much stronger without that last paragraph on the first page. It sort of, when I read it through, it sort of describes this is a hard no, but then there's a maybe in the next paragraph. And why isn't that something that needs to be taken into account on what essentially is the appeal of the 12B6 order, where we have to assume that the facts alleged are true in the complaint? And I apologize, which paragraph are you referring to? He's looking at the bottom of page ER58. The equivalent. Saying if you need assistance with the appropriate equivalents, go talk to Helen Morgan for review of the courses. What I meant was it's a hard no in the previous paragraph, but then it's sort of a maybe in the next paragraph. And why wouldn't that lead him to believe that he's still got a chance? I think the reason is because that paragraph is clearly referring, Mr. Saidi, to that second option that was outlined, which is you can take a statistics and a calculus approved, remember the word approved is used, approved calculus and statistics courses off the UCI campus, probably at a community college, and that would satisfy the requirement. That last sentence talks about it's getting assistance and review of the courses to ensure their transferability. I think the context is clear that the... It's referring back to the previous paragraph where it starts the second issue. Yeah. And so if he had then done something that had something to do with that, I think there maybe he'd have an argument. Something occurred that where it was still unclear, he couldn't find the right courses at a community college. That's not what they rely on. They rely on Mr. Saidi doing something that's not discussed, not outlined, he was not instructed to go to a different school, and sort of on a flyer, hey, maybe let's see if I can get a degree in some other school. We have no idea whether the units he had taken, whether they were adequate. We don't know what degree he would have been taking. So I guess my point on that is since he was deviating completely from what the instruction by the dean was, I don't think that can be used to extend the statute of limitations. Everything to this point was getting that poli-sci degree. I'd just like to have you comment on something that was from May of 2017 where the university employees represented in writing that a complete math waiver was possible, and we're dealing with what he should have understood or understood in October, and what four months earlier from that he was told a math waiver was possible. So this process of kind of leading him on is what concerns me because we're looking at a hard deadline for statute of limitations purposes. I understand that he pleads that in his first amendment complaint. My feeling is that when he finally gets that letter from the dean telling him no, and it that's the standard, that he was injured as of that date. Thank you. Thank you, counsel. So I think the UC and the trial court are trying to do too much on a 12v6 motion. There's nuances here that require a factual discovery in order to determine what Mr. Saidi knew as of October 2017. We don't agree with the interpretation that what the dean was suggesting in the letter meant only off-site or was limited to exactly what the dean was setting forth, but that there were alternative measures that might be sought. Counsel, the third letter of the paragraph says you got an alternative on the UC campus. You didn't do that. You were then provided with an option to complete the requirement off-campus with certain approved classes. And then this paragraph says if you need assistance with the appropriate equivalents, that's not just some appropriate equivalents. It seems to me clearly to refer back to that other paragraph that if you want to finally complete the math requirement, exactly as I've described it, we'll help you do that. But it doesn't appear to me to be an open invitation to just do something else. But it seems like we're sort of trying to read the tea leaves in terms of what the letter is. In plain English, to me, I don't, you know, I think when it seems to me that just because he tries something new and doesn't do what the letter suggests, I don't see how that changes what the letter tells him. Well, so what the dean was doing there, I believe, was continuing the interactive process. Mr. Saidi went forward and dealt with the university, and the interactive process is obviously fluid. But he didn't do what the letter, you know, says he should do. But the university worked with him in order to determine whether there was alternatives for him to meet this requirement. So obviously, during this time period from October to May, it worked with him in order to determine that. In fact, even allowing him to go to the Department of Humanities. So that's part of the interactive process. It's a mutual and fluid process. Regardless of if the dean says no, if he's continuing the interactive process and the university changes course during that process, that could result in an agreement and extends the statute of limitations via tolling. So counsel, if we were to grant you the relief you're seeking today, that would not prevent the district court on a motion for summary judgment to throw this case out on statute of limitations grounds. Correct? It's possible. If the court determines that during that period of time, either Mr. Saidi failed to properly engage in the interactive process or some other thing occurred, yes, I mean, certainly that could be the case. All right. Thank you. No, no more questions. All right. Thank you both, counsel, for your briefing and your argument in this matter. This case is submitted.
judges: GRABER, OWENS, Tunheim